UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X

DR. GERALD R. FINKEL, as Chairman of
the Joint Industry Board of the Electrical
Industry,

               Plaintiff,

        -against-

FIREALARM ELECTRICAL CORP. and
E.S.E. ELECTRICAL, INC., f/k/a,
ELECTRICAL SPECIALITY ENTERPRISE
INC.,

              Defendants.

---------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
21-CV-3802 (LDH) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

       Dr. Gerald R. Finkel, as Chairman of the Joint Industry Board of the Electrical

Industry ("Plaintiff"), initiated this action on July 7, 2021, against Defendants Firealarm

Electrical Corp. ("Firealarm") and E.S.E. Electrical, Inc. ("ESE"), formerly known as

Electrical Specialty Enterprise, Inc. (collectively "Defendants"). (Complaint ("Compl."),

ECF No. 1.) Plaintiff seeks delinquent benefit contributions and related relief pursuant to

Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA"),

29 U.S.C. §§ 1132(a)(3), 1145, and Section 301 of the Labor Management Relations Act

("LMRA"), 29 U.S.C. § 185. Specifically, Plaintiff seeks a judgment finding that Firealarm

is an alter ego of, and a single employer with, ESE, and vice versa, and that Defendants

are jointly and severally liable for the balance of prior judgments awarded against each

entity, as well as additional delinquent contributions. In addition, Plaintiff requests an

award of attorneys' fees and costs and post-judgment interest at the statutory rate.

Currently pending before this Court is Plaintiff's motion for default judgment (Mot. for Default J., ECF No. 10), which the Honorable LaShann DeArcy Hall referred to the undersigned Magistrate Judge for a report and recommendation (Sept. 20, 2021 ECF Order). For the reasons set forth below, this Court respectfully recommends that Plaintiff's motion for default judgment be granted.

## BACKGROUND

### I. Factual Background

Plaintiff is the Chairman of the Joint Industry Board of the Electrical Industry (the "JIB"). (Compl., ECF No. 1, ¶ 4.) The JIB administers employee benefit multiemployer plans pursuant to a collective bargaining agreement ("CBA") between Local Union No. 3 of the International Brotherhood of Electrical Workers (the "Union") and employers or employer associations in the electrical and other related industries. (*Id.*) Plaintiff alleges that per the CBA, and pursuant to ERISA, the JIB acts as an administrator, fiduciary, and collection agent with respect to:

> [W]eekly remittances directly from each employer bound by a CBA with the Union consisting of contributions to each of the ERISA Plans . . . as well as a Union assessment collected by the employer from each Union member that it employs[], which is equal to an employee's weekly hours worked multiplied by the benefits rate articulated in the CBA.

(*Id.* ¶ 6; *see also id.* ¶¶ 5, 7.) Employers are also required to remit employer contributions to the Deferred Salary Plan ("DSP") on behalf of all covered employees. (*Id.* ¶ 8.) In addition, the JIB collects employee loan payments due to the Union and contributions to fund the JIB's operations, which are referred to as "Non-ERISA Contributions." (*Id.* ¶ 9.) The employer contributions to each of the ERISA Plans, together with the DSP, the Union assessment remittances mentioned above, and the Non-ERISA Contributions, are collectively referred to as "Required Contributions." (*See id.* ¶¶ 11–12.)

Plaintiff alleges that at all relevant times, Defendants have been bound by the CBA with the Union, obligating them to make Required Contributions to Plaintiff for "all work performed in the trade and geographical jurisdiction of the Union ('Covered Work')," and imposing liability for any unpaid contributions, in addition to attorneys' fees and costs, and liquidated damages equal to twenty percent of unpaid contributions. (*See id.* ¶¶ 15–17.) Further, Plaintiff alleges that Defendants are required under the CBA to regularly submit reports of their "Covered Work." (*Id.* ¶ 18.)

Plaintiff has previously sought and obtained judgments against Defendants for their failure to make Required Contributions. (*See id.* ¶¶ 19–21, 26–29.) On December 18, 2018, Plaintiff filed an action against Firealarm in this district to recover delinquent contributions and accompanying damages for Covered Work completed between January 24, 2018, and January 31, 2018, and between April 18, 2018, and December 12, 2018. *See* Complaint, *Finkel v. Firealarm Electrical Corp.*, 18-CV-7211 (ILG) (JO) (E.D.N.Y. Dec. 18, 2018), ECF No. 1 (referred to herein as the "Firealarm Action"). Plaintiff obtained a default judgment in the Firealarm Action on September 6, 2019, in the amount of $1,071,240.50. *See* Default Judgment, *Finkel v. Firealarm Electrical Corp.*, No. 18-CV-7211 (ILG) (JO) (E.D.N.Y. Sept. 6, 2019), ECF No. 14 (referred to herein as the "Firealarm Judgment").

Likewise, on August 23, 2018, Plaintiff filed a petition in this district to confirm arbitration awards in Plaintiff's favor for ESE's delinquent contributions and accompanying damages for Covered Work completed during the period from August 16, 2017, to April 11, 2018. *See* Petition, *Finkel v. E.S.E. Electrical, Inc.*, No. 18-CV-4767 (ARR) (RLM) (E.D.N.Y. Aug. 23, 2018), ECF No. 1 (referred to herein as the "ESE Action"). On January 4, 2019, Plaintiff obtained a judgment against ESE in the amount of $667,178.57. *See* Clerk's Judgment, *Finkel v. E.S.E. Electrical, Inc.*, No. 18-CV-4767 (ARR)

(RLM) (E.D.N.Y. Jan. 4, 2019), ECF No. 14 (referred to herein as the "ESE Judgment").[1] In addition, Plaintiff alleges that Firealarm and ESE have incurred delinquencies subsequent to the periods underlying the judgments in the Firealarm and ESE Actions, for failing to make Required Contributions for Covered Work during the periods from December 18, 2018,[2] to October 7, 2020, and April 12, 2018, to December 28, 2018, respectively. (Compl., ECF No. 1, ¶¶ 22–24, 30–32.)

According to Plaintiff, Firealarm presently owes $1,637,600.59: $1,030,788.96 for the balance of the Firealarm Judgment, and $606,811.63 for additional delinquent contributions. (Declaration of Christina Sessa ("Sessa Decl."), ECF No. 12, ¶¶ 15–17.) Similarly, Plaintiff claims that ESE presently owes a total of $1,270,846: $578,090.48 for the balance of the ESE Judgment, and $692,755.52 for additional delinquent contributions. (*Id.* ¶¶ 18–20.) To summarize, Plaintiff claims that Defendants collectively owe a total of $2,908,446.59, excluding attorneys' fees and costs. (*Id.* ¶ 21.)[3]

---

[1] The Firealarm and ESE Judgments are also attached as exhibits to the Declaration of John M. Harras ("Harras Decl."). (*See* ECF Nos. 11-4 & 11-5.)

[2] The Court notes that the complaint alleges that Firealarm failed to remit Required Contributions for Covered Work for a period beginning on December 18, 2018. (Compl., ECF No. 1, ¶¶ 23–24.) However, Plaintiff's default motion states that this period began on December 19, 2018. (*See* Declaration of Christina Sessa ("Sessa Decl."), ECF No. 12, ¶ 15.) For the purposes of this motion, the Court uses the later date.

[3] The Court notes there are slight discrepancies in the record as to the amounts Plaintiff is seeking. (*Compare* Compl., ECF No. 1, ¶¶ 24, 32, *with* Sessa Decl., ECF No. 12, ¶¶ 15, 18.) In addition, the complaint originally sought a judgment "in the principal amount of $2,985,578.40" (Compl., ECF No. 1, Prayer for Relief), whereas Plaintiff's default motion seeks a judgment of $2,917,178.59 (Proposed Default Order, ECF No. 11-7). Due to questions regarding Plaintiff's requested prayer for relief, and in light of the prior judgments against each Defendant, the Court held a default hearing on November 9, 2021, and requested a supplemental submission clarifying Plaintiff's requested relief. (Nov. 9, 2021 ECF Minute Entry and Order.) For present purposes, the Court's analysis is guided by the figures included in the submissions filed in support of Plaintiff's motion for default judgment. (Pl.'s Letter, ECF No. 17.) Accordingly, Plaintiff's requested damages total appears to be $2,917,238.59: $2,908,446.59 arising from the judgment balances and additional delinquent contributions, plus $8,792 in attorneys' fees and costs. (*See* Sessa Decl., ECF No. 12, ¶ 21; Harras Decl., ECF No. 11, ¶¶ 18–20; Pl.'s Letter, ECF No. 17, at 3.)

In addition, Plaintiff alleges that at all relevant times, Defendants have been alter ego entities, predecessors/successors, and/or a single employer, thereby rendering them jointly and severally liable for the Firealarm and ESE Judgments, as well as any additional delinquencies incurred by either entity. (*See* Compl., ECF No. 1, ¶¶ 33–49, 55–56, 60–64.)

## II. Procedural History

As noted, Plaintiff commenced this action on July 7, 2021. (Compl., ECF No. 1.) On August 26, 2021, the Clerk of Court entered a certificate of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, due to Defendants' failure to appear or otherwise defend this action. (Clerk's Entry of Default, ECF No. 9.) Plaintiff then moved for default judgment against Defendants on September 14, 2021. (*See* Mot. for Default J., ECF No. 10.) On September 20, 2021, Judge DeArcy Hall referred Plaintiff's motion to the undersigned Magistrate Judge for a report and recommendation. (Sept. 20, 2021 ECF Order.) On September 22, 2021, the Court scheduled a status conference on the default motion for November 9, 2021, and mailed formal written notice to Defendants at all available addresses. (*See* Sept. 22, 2021 Scheduling Order and Notice to Defendants, ECF No. 15.) Neither Defendant appeared at the November 9, 2021 conference. (Nov. 9, 2021 ECF Minute Entry and Order.) At the conference, the Court directed Plaintiff's counsel to submit a supplemental letter clarifying the distinction between the damages and fees requested in this case and the damages and fees awarded in the prior Firealarm and ESE Actions, which Plaintiff filed on November 24, 2021. (*Id.*; Pl.'s Letter, ECF No. 17.)

## DISCUSSION

### I. Legal Standards

Federal Rule of Civil Procedure 55 provides a "two-step process" for obtaining a default judgment. *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, the

plaintiff must obtain an entry of default when a defendant "has failed to plead or otherwise defend" in an action. Fed. R. Civ. P. 55(a). Second, after the certificate of default is entered, the district court may, on a plaintiff's application, enter a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local Civ. R. 55.2(b). However, a plaintiff "is not entitled to a default judgment as a matter of right simply because a party is in default." *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013). Rather, the decision to grant a motion for default judgment is left to the discretion of the district court. *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contrs. Inc.*, 699 F.3d 230, 233 (2d Cir. 2012).

As an initial matter, the plaintiff must demonstrate proper service of the summons and complaint and establish compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1, 55.1, and 55.2. *See Advanced Capital Commercial Group, Inc. v. Suarez*, No. 09-CV-5558 (DRH) (GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013).[4] The court must then determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *see also Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) ("[I]t remains the plaintiff's burden to demonstrate that those uncontroverted allegations,

---

[4] Having carefully reviewed all of the filings in the case, the Court notes that Plaintiff's motion comports with Local Rule 7.1, and that Plaintiff has established procedural compliance with Local Civil Rules 55.1 and 55.2, which govern default judgment motions. Specifically, Plaintiff (1) requested a certificate of default in accordance with Local Rule 55.1(a) (*see* Request for Certificate of Default, ECF No. 8); (2) filed an affidavit demonstrating that Defendants have failed to defend the action, that the pleadings were properly served, and that the entities against whom the default is sought are corporations, and not an infant, a person in the military, or an incompetent person, in accordance with Local Rule 55.1(b) (*see* Declaration of John M. Harras, ECF No. 8-1; Harras Decl., ECF No. 11; *see also* ECF Nos. 5 & 6 (Affidavits of Service for the Summons and Complaint)); and (3) certified the mailing of the default motion papers to Defendants' last known business addresses, in accordance with Local Rule 55.2(c). (*See* Certificate of Service, ECF No. 14 (certifying mail service of Plaintiff's motion to Defendants' business addresses).)

without more, establish the defendant's liability on each asserted cause of action."). In making this determination, courts accept a plaintiff's "factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Finkel*, 577 F.3d at 84; *see also Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y. Mar. 9, 2021).

Moreover, while a default constitutes an admission of liability as to well-pleaded allegations, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-6476 (ARR) (PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *report and recommendation adopted*, No. 18-CV-6476 (ARR), 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020); *see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997).

## II.    Entry of Default Judgment

As set forth in the complaint, Plaintiff alleges that Firealarm and ESE are alter ego entities and a single employer, and that Defendants should be held jointly and severally liable for the balance of past judgments against each Defendant as well as more recent delinquencies. (*See* Compl., ECF No. 1, ¶¶ 50–58.) For the reasons set forth below, and construing all factual allegations in Plaintiff's favor, the Court respectfully recommends granting Plaintiff's request for default judgment.

### A.  Alter Ego Status

"The purpose of the alter ego doctrine in the ERISA context is to prevent an employer from evading its obligations under the labor laws 'through a sham transaction or technical change in operations.'" *Ret. Plan of UNITE HERE Nat. Ret. Fund v. Kombassan Holding A.S.*, 629 F.3d 282, 288 (2d Cir. 2010) (quoting *Newspaper Guild of N.Y., Local No. 3*

*of the Newspaper Guild, AFL–CIO v. NLRB*, 261 F.3d 291, 298 (2d Cir. 2001)). Therefore, "[t]o protect employee benefits, courts observe 'a general federal policy of piercing the corporate veil when necessary.'" *Id.* (quoting *N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 647 (2d Cir. 2005)). In the Second Circuit, "'the test of alter ego status is flexible,' allowing courts to 'weigh the circumstances of the individual case,' while recognizing that the following factors are important: 'whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership.'" *Ferrara v. Smithtown Trucking Co.*, 29 F. Supp. 3d 274, 284 (E.D.N.Y. 2014) (quoting *Kombassan Holding A.S.*, 629 F.3d at 288); *see also Salgo v. New York Concrete Corp.*, 447 F. Supp. 3d 136, 144 (S.D.N.Y. 2020). Additionally, "[a]lthough the alter ego doctrine is primarily applied in situations involving successor companies . . . . [p]arallel existence is not an impediment to imposing alter ego status." *Kombassan Holding A.S.*, 629 F.3d at 288 (quotation marks omitted). "When an entity is determined to be an alter ego, that signifies that, for all relevant purposes, the non-signatory is legally equivalent to the signatory and is itself a party to the [collective bargaining agreement]." *Trustees of Mosaic & Terrazzo Welfare, Pension, Annuity, & Vacation Funds v. Elite Terrazzo Flooring, Inc.*, No. 18-CV-1471 (CBA) (CLP), 2021 WL 1146560, at *6 (E.D.N.Y. Mar. 3, 2021) (alteration in original), *report and recommendation adopted*, No. 18-CV-1471 (CBA) (CLP), 2021 WL 1146113 (E.D.N.Y. Mar. 25, 2021).

Looking at the above factors as applied to this case, the Court finds that Plaintiff has adequately alleged facts showing that Defendants are alter ego entities. Plaintiff alleges that the estate of Sibelle Daams owns Firealarm and ESE, and that as the executor of the Daams estate, Walter Stanzione is the effective owner of both Defendants. (Compl., ECF No. 1, ¶¶ 33–35.) Plaintiff further claims that Mr. Stanzione and his

daughter, Phabiana Stanzione, "oversee all administrative operations for Defendants, including managing the finances of Defendants, handling payroll, hiring vendors and subcontractors, and controlling relations with labor." (*Id.* ¶ 36; *see also id.* ¶¶ 60–61.) Accordingly, Plaintiff has alleged that Defendants have identical ownership and management.

In addition, Plaintiff contends that Defendants share the same: (1) facilities at 2565 North Jerusalem Road, East Meadow, New York, 11554, and 46-13 27th Street, Long Island City, New York 11101; (2) business purpose of "installing electrical systems, servicing electrical systems, and contracting to perform electrical work on construction projects;" and (3) staff and employees, including Stephan Stanzione and Yanni Nassis. (*Id.* ¶¶ 37–40.) Furthermore, Plaintiff asserts that Defendants maintain a close financial relationship and frequently transfer money between the two entities "without regard for corporate formalities or normal arm's length business relations." (*Id.* ¶ 41.) For instance, Plaintiff alleges that Firealarm "pays ESE's payroll directly," and that "[i]n August 2017, Firealarm transferred $48,000 to ESE and . . . the principal of ESE withdrew that $48,000 in cash [one day later]," and "[i]n November 2017, Firealarm transferred $265,686.60 to ESE without any apparent consideration." (*Id.* ¶¶ 41–42.)

Plaintiff also alleges that Phabiana and Walter Stanzione maintain a "'slush fund' wherein all assets of Firealarm and ESE are deposited to evade the creditors of each Defendant," including Plaintiff. (*Id.* ¶¶ 43–44, 46, 62–63.) Plaintiff claims this evinces an "anti-union animus" because it shows they "deliberately managed Defendants' finances in such a way to avoid their benefit contribution obligation to Plaintiff under the CBA." (Pl.'s Mem. in Supp. of Mot. for Default J. ("Pl.'s Mem."), ECF No. 13, at 10.) Such animus, though a "sufficient basis for imposing alter ego status, . . . is not a necessary

factor." *Kombassan Holding A.S.*, 629 F.3d at 288 (quoting *Goodman Piping Prods., Inc. v. NLRB*, 741 F.2d 10, 12 (2d Cir. 1984)); *see also Ferrara*, 29 F. Supp. 3d at 285.

Accordingly, accepting Plaintiff's allegations as true, *see Finkel*, 577 F.3d at 84, Plaintiff has alleged that the two Defendant enterprises share substantially the same ownership, management, business purpose, operations, and supervision. The Court therefore respectfully recommends finding that Defendants Firealarm and ESE are alter egos of one another. *See Elite Terrazzo Flooring, Inc.*, 2021 WL 1146560, at *7; *Ferrara*, 29 F. Supp. 3d at 285.

## B. Single Employer

The alter ego doctrine and the single employer doctrine are similar but "conceptually distinct." *Lihli Fashions Corp. v. NLRB*, 80 F.3d 743, 748 (2d Cir. 1996); *Trustees of Mosaic & Terrazzo Welfare, Pension, Annuity & Vacation Funds v. High Performance Floors, Inc.*, 233 F. Supp. 3d 329, 334 (E.D.N.Y. 2017). Under the single employer doctrine, two separate companies may be "jointly and severally liable under a collective bargaining agreement signed by only one if both are part of a 'single integrated enterprise.'" *Trustees of Plumbers Loc. Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund, 401(k) Sav. Plan v. ENOBRAC Plumbing Inc.*, No. 17-CV-2846 (DLI) (SJB), 2018 WL 3635049, at *10 (E.D.N.Y. Feb. 12, 2018). This requires a finding that "(1) the two employers constitute a 'single employer' and (2) the employees of the companies constitute a single appropriate bargaining unit." *Trustees of the Loc. 7 Tile Indus. Welfare Fund v. Richard's Improvement Bldg. Inc.*, No. 15-CV-3898 (JS) (AKT), 2016 WL 6110455, at *8 (E.D.N.Y. Aug. 1, 2016), *report and recommendation adopted*, No. 15-CV-3898 (JS) (AKT), 2016 WL 4764909 (E.D.N.Y. Sept. 12, 2016).

"Whether two entities constitute a 'single employer' is determined by four factors enumerated by the Supreme Court: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." *High Performance Floors, Inc.*, 233 F. Supp. 3d at 334. Additionally, courts in this circuit weigh the following two factors: "use of common office facilities and equipment and [] family connections between or among the various enterprises." *Id.* "Ultimately, single employer status depends on all the circumstances of the case and is characterized by absence of an arm's length relationship found among unintegrated companies." *Ferrara v. Pro. Pavers Corp.*, No. 11-CV-1433 (KAM) (RER), 2013 WL 1210522, at *3 (E.D.N.Y. Feb. 15, 2013), *report and recommendation adopted*, No. 11-CV-1433 (KAM) (RER), 2013 WL 1212816 (E.D.N.Y. Mar. 23, 2013); *see also Lihli Fashions Corp.*, 80 F.3d at 747. As noted, "[t]o hold one company to a collective bargaining agreement made by another company, it must also be shown that they 'represent an appropriate employee bargaining unit,'" which requires "a 'community of interests' among the relevant employees, and 'factors such as bargaining history, operational integration, geographic proximity, common supervision, similarity in job function and degree of employee interchange.'" *Richard's Improvement Bldg. Inc.*, 2016 WL 6110455, at *8 (quoting *Lihli Fashions Corp.*, 80 F.3d at 747); *see also Ferrara*, 2013 WL 1210522, at *4.

Taking Plaintiff's allegation as true, Plaintiff has sufficiently alleged that Defendants constitute a single employer. Plaintiff asserts that Firealarm and ESE operate without "normal arm's length business relations." (Compl., ECF No. 1, ¶ 41; *see also* Pl.'s Mem., ECF No. 13, at 12.) Further, as discussed above, Plaintiff contends that Defendants share the same ownership, management, and control of labor, and operate using common facilities and close family connections. (*See* Compl., ECF No. 1, ¶¶ 33–42, 47–49, 60–61.) Additionally, in claiming operational integration, geographic proximity, and

common supervision, Plaintiff has adequately alleged that Defendants "represented an appropriate employee bargaining unit." *Richard's Improvement Bldg. Inc.*, 2016 WL 6110455, at *8. Therefore, taken together, these allegations are sufficient to establish a single employer relationship between Defendants. *See id.*; *Ferrara*, 2013 WL 1210522, at *4; *La Barbera v. Les Sub-Surface Plumbing, Inc.*, No. 06-CV-3343 (NG) (KAM), 2008 WL 906695, at *5 (E.D.N.Y. Apr. 3, 2008).

### C.  Joint and Several Liability

In light of their alter ego and single employer status, Plaintiff avers that "Defendants are and have at all relevant times been bound by the CBA and are jointly and severally liable for each other's obligations thereunder, including the Firealarm Judgment, the ESE Judgment," and each entity's additional delinquencies. (Compl., ECF No. 1, ¶¶ 56, 58.)

As an initial matter, the Court considers whether Plaintiff has adequately alleged that Defendants are bound by the CBA. *See Trustees of Plumbers Loc. Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund, 401(K) Sav. Plan v. Temperini Mech. Inc.*, No. 18-CV-2596 (AMD) (LB), 2018 WL 8452493, at *4 (E.D.N.Y. Dec. 28, 2018), *report and recommendation adopted sub nom. Trustees of Plumbers Loc. Union No. 1 Welfare Fund v. Temperini Mech. Inc.*, No. 18-CV-2596 (AMD) (LB), 2019 WL 2301613 (E.D.N.Y. May 30, 2019).

Plaintiff claims that Defendants are employers as defined by ERISA and have been bound by the CBA with the Union at all relevant times, and were therefore required to make certain contributions to multiemployer benefit plans. (*See* Compl., ECF No. 1, ¶¶ 13–18, 53; *see also* Firealarm Agreement, attached as Ex. A to Harras Decl., ECF No. 11-1; ESE Agreement, attached as Ex. B to Harras Decl., ECF No. 11-2.) Taking these

allegations as true, the facts alleged in the complaint suffice to establish that Firealarm and ESE are bound by the CBA.

Plaintiff further alleges that Defendants are delinquent on their Required Contributions, and thus liable to Plaintiff pursuant to the CBA with the Union and ERISA. (Compl., ECF No. 1, ¶¶ 19, 23–25, 31–32, 51–58.) Specifically, Plaintiff contends that Firearm's delinquent contributions from between January 24, 2018, and January 31, 2018, and between April 18, 2018, and December 12, 2018, are the basis of the Firealarm Judgment, and that Firealarm also owes delinquent contributions from December 18, 2018 through October 7, 2020. (*Id.* ¶¶ 19–21, 23–24; Sessa Decl., ECF No. 12, ¶¶ 15–16.) Similarly, Plaintiff asserts that ESE's delinquent contributions from between August 16, 2017, and April 11, 2018, form the basis of the ESE Judgment and that ESE also owes contributions from between April 12, 2018, and December 26, 2018. (Compl., ECF No. 1, ¶¶ 25–29, 31–32; Sessa Decl., ECF No. 12, ¶ 18–19.)

As discussed above, Plaintiff has established that Firealarm is the alter ego of ESE, and vice versa, and that the two Defendants constitute a single employer. Accordingly, the Court respectfully recommends finding that Defendants are bound by the CBA and may be held jointly and severally liable for each other's obligations, as outlined below. *See Mason Tenders Dist. Council of Greater New York v. Phase Constr. Servs., Inc.*, No. 14-CV-6016 (ER), 2019 WL 95562, at *15, 16 (S.D.N.Y. Jan. 3, 2019) (citing *Lihli Fashions Corp.*, 80 F.3d at 748); *Temperini Mech. Inc.*, 2018 WL 8452493, at *4; *Richard's Improvement Bldg. Inc.*, 2016 WL 6110455, at *9.

### 1. Defendants' Liability for Prior Judgments

"Courts have frequently held alter ego companies liable for each other's past judgments." *Trustees of Plumbers Loc. Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund, 401(k) Sav. Plan v. Temperini Mech. Inc.*,

No. 18-CV-2596 (AMD) (LB), 2020 WL 571680, at *2 (E.D.N.Y. Jan. 13, 2020) (collecting cases), *report and recommendation adopted sub nom. Trustees of Plumbers Loc. Union No. 1 Welfare Fund v. Temperini Mech. Inc.*, No. 18-CV-2596 (AMD) (LB), 2020 WL 565410 (E.D.N.Y. Feb. 5, 2020); *see also Elite Terrazzo Flooring, Inc.*, 2021 WL 1146560, at *8.

As noted, the JIB has obtained a prior judgment against each Defendant for its failure to remit Required Contributions. On September 6, 2019, the Honorable I. Leo Glasser awarded a judgment in the amount of $1,071,240.50 in the Firealarm Action, and on January 4, 2019, judgment was entered in the ESE Action pursuant to an order of the Honorable Allyne R. Ross in the amount of $667,178.57. (*See* Compl., ECF No. 1, ¶¶ 19–21, 25–29; Firealarm Judgment; ESE Judgment.) Plaintiff has also submitted a declaration from the JIB's in-house counsel, Christina Sessa, who oversees "the collection of delinquent benefit contributions owed by employers[.]" (Sessa Decl., ECF No. 12, ¶¶ 1–3.) According to Ms. Sessa, Firealarm owes $1,030,788.96 on the balance of the Firealarm Judgment and ESE owes $578,090.48 on the balance of the ESE Judgment. (*Id.* ¶¶ 16, 19; *see also* Firealarm and ESE Balance and Damages Spreadsheets, attached as Exs. A–D to Sessa Decl., ECF Nos. 12-1, 12-2, 12-3, 12-4.)

Having reviewed the complaint, relevant documentation, and sworn declaration of Christina Sessa, and in light of Defendants' alter ego and single employer status, the Court respectfully recommends (1) that Firealarm be held jointly and severally liable for the balance of the ESE Judgment in the amount of $578,090.48; and (2) that ESE be held jointly and severally liable for the balance of the Firealarm Judgment in the amount of $1,030,788.96.[5] *See Elite Terrazzo Flooring*, Inc., at *8; *Temperini Mech. Inc.*, 2020 WL 571680, at *2; *Richard's Improvement Bldg. Inc.*, 2016 WL 6110455, at *9.

---

[5] The Court notes, of course, that Firealarm and ESE are already liable for the judgments entered against them in the prior actions, and that the judgment amounts recommended here

2. <u>Defendants' Liability for Additional Delinquencies</u>

Plaintiff further alleges that subsequent to the delinquent contributions resulting in the Firealarm and ESE Judgments, Firealarm failed to remit Required Contributions under the CBA for Covered Work completed between December 18, 2018, and October 7, 2020, and ESE failed to remit Required Contributions for Covered Work completed between April 12, 2018, and December 26, 2018. (Compl., ECF No. 1, ¶¶ 23–24, 31–32; Sessa Decl., ECF No. 12, ¶¶ 15, 18.)

"Courts in this circuit have recognized that Section 1145 [under ERISA] establishes the elements necessary to make out a claim for failure to pay contributions." *Elite Terrazzo Flooring, Inc.*, 2021 WL 1146560, at *9 (citing *Trustees of Local 813 Ins. Trust Fund v. Freedom Demolition*, No. 13-CV-2701 (NGG) (SMG), 2014 WL 5305983, at *2 (E.D.N.Y. Oct. 15, 2014)). This section states, in relevant part, that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145; *see also id.* § 1132(g)(2) (stating, *inter alia*, that if there is a judgment in favor of a "fiduciary for or on behalf of a plan" seeking to enforce § 1145, "the court shall award the plan . . . the unpaid contributions," as well as "interest on the unpaid contributions [and] liquidated damages" according to the "rate provided under the plan"). Relatedly, Section 301 of the LMRA provides a federal cause of action for "violation[s] of contracts between an employer and a labor organization representing employees . . . or between any such labor organizations . . . ." 29 U.S.C. § 185(a).

_____

do not duplicate, or double-count, those prior judgments. (*See generally* Pl.'s Letter, ECF No. 17.)

Plaintiff alleges that because Defendants were bound at all relevant times by the CBA with the Union, which required them "to remit benefit contributions to Plaintiff for each hour worked by Defendants' employees in the trade and geographic jurisdiction of any of the Unions," Defendants have "breached their respective obligation[s]." (Pl.'s Mem., ECF No. 13, at 13 (citing, *inter alia*, Compl., ECF No. 1, ¶¶ 4–12, 15–16, 19–32; Sessa Decl., ECF No. 12, ¶¶ 15–21; Firealarm Agreement, ECF No. 11-1, Article 11; ESE Agreement, ECF No. 11-2, Article II; JIB Policy for Collection of Delinquent Contributions ("JIB Collection Policy"), attached as Ex. C to Harras Decl., ECF No. 11-3).) Further, by breaching these obligations, Plaintiff claims that Defendants have violated § 1145 under ERISA and subjected themselves to this Court's jurisdiction under § 185 of the LMRA, allowing the Court to "enforce the terms of the CBA and the Collection Policy against Defendants." (Pl.'s Mem., ECF No. 13, at 13.)

On a motion for default judgment, these well-pleaded allegations are sufficient to establish liability under ERISA and the LMRA. *See, e.g.*, *Annuity, Pension, Welfare, Training & Lab. Mgmt. Cooperation Tr. Funds of Int'l Union of Operating Engineers , Loc. 14-14B, AFL-CIO by Christian v. Coastal Env't Grp. Inc.*, No. 18-CV-5773 (AMD) (ST), 2019 WL 4603805, at \*8–9 (E.D.N.Y. Sept. 5, 2019), *report and recommendation adopted*, No. 18-CV-5773 (AMD) (ST), 2019 WL 4602851 (E.D.N.Y. Sept. 23, 2019); *Annuity, Pension, Welfare, Training & Lab. Mgmt. Cooperation Tr. Funds of Int'l Union of Operating Engineers Loc. 14-14B, AFL-CIO by Christian v. BKS-NY, LLC*, No. 18-CV-256 (LDH) (VMS), 2018 WL 4522103, at \*4 (E.D.N.Y. Aug. 6, 2018); *Finkel*, 970 F. Supp. 2d at 119.

### D. Default Determination

In addition to reaching questions of liability, the Court must determine whether Defendants' conduct warrants the entry of default judgment. In making this determination, the Court is guided by the same factors that apply to a motion to set aside

entry of a default under Federal Rule of Civil Procedure 55(c). *See Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). These factors are "(1) whether the default was willful; (2) whether the moving party has presented a meritorious defense; and (3) whether setting aside the default would prejudice the non-defaulting party." *Beyonics Int'l PTE Ltd. v. Smith*, 833 F. App'x 492, 493 (2d Cir. 2020) (summary order).

Absent any pleading or response from Defendants, despite extensive efforts to serve and notify them of the pending default motion, the Court weighs the first two factors in favor of entering default. *See Richard's Improvement Bldg. Inc.*, 2016 WL 6110455, at *6 (finding that "[t]here is no indication that Defendants' failure to respond to both the Amended Complaint and the motion for default judgment, despite being properly served, was anything but willful," and that "where a defendant fails to answer the complaint, a court is unable to make a determination whether the defendant has a meritorious defense to the plaintiff's claims, which factor weighs in favor of granting a default judgment"). Here, the Court has little difficulty finding that Defendants' absence from the case is willful. First, the Court notes the procedural history: Plaintiff filed this action seeking to hold Defendants liable for two prior judgments, both of which were also awarded in a default posture. (*See* Firealarm Judgment; ESE Judgment.) In addition, the Court itself mailed Defendants clear notice of the pending default motion. (*See* Notice to Defendants, ECF No. 15.) The record makes plain that Defendants are declining to participate in this action. In addition, because Defendants have not responded to any of the Court's summons, the Court cannot ascertain what defenses they might have raised.

The final factor is whether in the absence of a default judgment, the non-defaulting party would be prejudiced. This factor also weighs in favor of entry of default

here because "[d]enying this motion would be prejudicial to Plaintiff[] 'as there are no additional steps available to secure relief in this Court.'" *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 124 (E.D.N.Y. 2011) (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)). Since all three factors are satisfied, the Court respectfully recommends that default judgment be entered. *See Finkel*, 970 F. Supp. 2d at 119–20.

## III. Damages

Having found that Defendants' default constitutes an admission of liability with respect to Plaintiff's claims and that entry of default judgment is appropriate, the Court now must determine the appropriate damages. *See Metro Found. Contractors, Inc.*, 699 F.3d at 234 (explaining that although the allegations in a complaint related to liability are deemed admitted upon entry of a default judgment, a default "is not considered an admission of damages"). "The court must determine the amount of damages, actual or statutory, that may be assessed," and "ensure that there is a reasonable basis for the damages specified in a default judgment." *Santillan v. Henao*, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011). As discussed above, "[t]he plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc.*, 2020 WL 5519200, at *3. Federal Rule of Civil Procedure 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich and Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991). In addition, the moving party is entitled to all reasonable inferences from the evidence it offers. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

For the reasons discussed above, the Court has already concluded that Defendants should be held jointly and severally liable for the $1,030,788.96 balance on

the Firealarm Judgment and the $578,090.48 balance on the ESE Judgment. The Court now addresses Plaintiff's request for damages on the basis of Defendants' additional delinquent contributions, post-judgment interest, and attorneys' fees and costs.

### A. Additional Unpaid Contributions, Interest & Liquidated Damages

Plaintiff claims that Firealarm owes $606,811.63 in additional damages for Covered Work completed between December 18, 2018, and October 7, 2020, comprised of $446,306.75 in unpaid contributions, $71,243.53 in interest, and $89,261.35 in liquidated damages. (Compl., ECF No. 1, ¶¶ 23–24; Sessa Decl., ECF No. 12, ¶ 15; Firealarm Balance and Damages Spreadsheets, ECF Nos. 12-1 & 12-2.) Likewise, Plaintiff claims that ESE owes $692,755.52 in additional damages for Covered Work completed between April 25, 2018, and December 26, 2018, comprised of $526,394.85 in unpaid contributions, $61,081.70 in interest, and $105,278.97 in liquidated damages. (Compl., ECF No. 1, ¶¶ 31–32; Sessa Decl., ECF No. 12, ¶ 18; ESE Balance and Damages Spreadsheets, ECF Nos. 12-3 & 12-4.)

For the reasons below, the Court recommends awarding Plaintiff $1,299,567.15 ($606,811.63 + $692,755.52) in damages arising out of these unpaid contributions.

#### 1. Unpaid Contributions

The CBA requires Defendants to make Required Contributions for Covered Work and provides for damages if Defendants fail to remit said contributions. (*See* Compl., ECF No. 1, ¶¶ 16–17; Firealarm Agreement, ECF No. 11-1, Article 11; ESE Agreement, ECF No. 11-2, Article II; JIB Collection Policy, ECF No. 11-3, at 5.) Furthermore, as discussed above, ERISA requires employers to submit benefit contributions in accordance with the CBA. *See* 29 U.S.C. § 1145. Plaintiff calculated the above amounts based on Firealarm and ESE's respective reports of Covered Work for the relevant time periods. (*See* Sessa Decl., ECF No. 12, ¶¶ 15, 18; Firealarm Balance Spreadsheet, ECF No.

12-1; ESE Balance Spreadsheet, ECF No. 12-3.) Having reviewed Plaintiff's submissions, the Court finds that Plaintiff has met the necessary burden of establishing unpaid benefit contribution damages in the amounts of $446,306.75 for Firealarm, and $526,394.85 for ESE. (Sessa Decl., ECF No. 12, ¶¶ 15, 18.) *See Gesualdi v. Burtis Constr. Co.*, No. 20-CV-4864 (ARR) (ARL), 2021 WL 6550952, at *3 (E.D.N.Y. Dec. 28, 2021), *report and recommendation adopted*, No. 20-CV-4864 (ARR) (ARL), 2022 WL 173548 (E.D.N.Y. Jan. 19, 2022); *Trustees of Bldg. Trades Educ. Benefit Fund v. Laura Elec. Lighting & Maint. Serv. Inc.*, No. 20-CV-3700 (DRH) (JMW), 2021 WL 6294391, at *3 (E.D.N.Y. Dec. 14, 2021), *report and recommendation adopted*, No. 20-CV-3700 (DRH) (JMW), 2022 WL 59655 (E.D.N.Y. Jan. 6, 2022); *Finkel*, 970 F. Supp. 2d at 122–23.

2. Interest on Unpaid Contributions

Where Defendants fail to remit Required Contributions, the CBA and JIB Collection Policy permit Plaintiff to collect interest on unpaid contributions. (Compl., ECF No. 1, ¶ 17; Firealarm Agreement, ECF No. 11-1, Article 11 § 9; ESE Agreement, ECF No. 11-2, Article II § 12; JIB Collection Policy, ECF No. 11-3, at 4–5.) Courts also award interest on unpaid contributions pursuant to 29 U.S.C. § 1132(g)(2)(B). Pursuant to both the CBA and § 1132(g), Plaintiff calculated the interest owed on the delinquent contributions in this case based on the formula set forth in Section 6621 of the Internal Revenue Code, 26 U.S.C. § 6621. (*See* Pl.'s Mem., ECF No. 13, at 15; Firealarm Agreement, ECF No. 11-1, Article 11 § 9; ESE Agreement, ECF No. 11-2, Article II § 12; JIB Collection Policy, ECF No. 11-3, at 4.)

Therefore, the Court finds that Plaintiff has established interest owed on Defendants' unpaid benefit contributions in the amounts of $71,243.53 for Firealarm, and $61,081.70 for ESE. (Sessa Decl., ECF No. 12, ¶¶ 15, 18; Firealarm Damages Spreadsheet, ECF No. 12-2; ESE Damages Spreadsheet, ECF No. 12-4.) *See Trustees of Empire State*

*Carpenters Annuity, Apprenticeship, Lab. Mgmt. Co-op., Pension & Welfare Funds v. Flooring Experts, Inc.*, No. 12-CV-6317 (ADS) (AKT), 2013 WL 4042357, at *7 (E.D.N.Y. Aug. 8, 2013) (recommending the award of requested interest when "there [was] no evidence that this figure was calculated incorrectly"), *report and recommendation adopted*, No. 12-CV-6317 (ADS) (AKT), 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013); *see also Gesualdi*, 2021 WL 6550952, at *4; *Laura Elec. Lighting & Maint. Serv. Inc.*, 2021 WL 6294391, at *4.

      3.  <u>Liquidated Damages</u>

Furthermore, where Defendants fail to remit Required Contributions, the CBA and JIB Collection Policy permit Plaintiff to collect liquidated damages equal to up to twenty percent of the unpaid contributions. (Compl., ECF No. 1, ¶ 17; Firealarm Agreement, ECF No. 11-1, Article 11 § 9; ESE Agreement, ECF No. 11-2, Article II § 12; JIB Collection Policy, ECF No. 11-3, at 4–5.) This remedy mirrors the statutory remedy provided for by ERISA. *See* 29 U.S.C. § 1132(g)(2)(C). Thus, the Court similarly finds that Plaintiff has met the necessary burden for establishing entitlement to liquidated damages on Defendants' unpaid benefit contributions in the amounts of $89,261.35 for Firealarm, and $105,278.97 for ESE. (Sessa Decl., ECF No. 12, ¶¶ 15, 18; Firealarm Damages Spreadsheet, ECF No. 12-2; ESE Damages Spreadsheet, ECF No. 12-4.) *See Gesualdi*, 2021 WL 6550952, at *4; *Laura Elec. Lighting & Maint. Serv. Inc.*, 2021 WL 6294391, at *4; *Trustees of Bldg. Trades Educ. Benefit Fund v. Culver Elec.*, LLC, No. 17-CV-3448 (DRH) (SLT), 2021 WL 1911122, at *4 (E.D.N.Y. Apr. 19, 2021), *report and recommendation adopted*, No. 17-CV-3448 (DRH) (ST), 2021 WL 1906486 (E.D.N.Y. May 12, 2021).

*   *   *   *   *

Accordingly, for the reasons outlined above, the Court recommends awarding Plaintiff damages in the amount of $606,811.63 for Firealarm's additional delinquencies,

and $692,755.52 for ESE's additional delinquencies, for which Defendants shall be held jointly and severally liable.

### B. Post-Judgment Interest

Plaintiff also seeks an award of post-judgment interest at the statutory rate. (Compl., ECF No. 1, ¶ 58; Pl.'s Mem., ECF No. 13, at 18–19.) The Second Circuit has held that an award of post-judgment interest at the statutory rate prescribed by 28 U.S.C. § 1961(a) is "mandatory." *See Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004). Section 1961(a) provides that post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the [] date of the judgment." 28 U.S.C. § 1961(a). "Moreover, post-judgment interest 'shall be computed daily [from the date of judgment] to the date of payment.'" *Temperini Mech. Inc.*, 2020 WL 571680, at *3 (alteration in original) (quoting 28 U.S.C. § 1961(b)).

Here, Plaintiff seeks an award of "post-judgment interest on the full judgment amount," which includes the balances of the Firealarm and ESE judgments, as well as the additional delinquencies. (Pl.'s Mem., ECF No. 13, at 18; *see also* Compl., ECF No. 1 ¶ 58.) "Courts have awarded post-judgment interest on a previously entered judgment against alter ego defendants." *Temperini Mech. Inc.*, 2020 WL 571680, at *3 (citing *Trustees of Loc. 7 Tile Indus. Welfare Fund v. Amarko Marble & Granite Co.*, No. 13-CV-2779 (FB) (CLP), 2014 WL 1622098, at *7–8 (E.D.N.Y. Apr. 22, 2014)); *see also Richard's Improvement Bldg. Inc.*, 2016 WL 6110455, at *11. The Court notes, however, that post-judgment interest was not expressly awarded in the Firealarm or ESE Judgments. (*See generally* Firealarm Judgment; ESE Judgment.) Therefore, to the extent Plaintiff is seeking an award of post-judgment interest as to Firealarm with respect to the Firealarm Judgment, or ESE with respect to the ESE Judgment, such requests are more appropriately directed

to the district courts that issued those judgments. *Cf. In re Frigitemp Corp.*, 781 F.2d 324, 327 (2d Cir. 1986) (citing Federal Rule of Civil Procedure 60(a) as the remedy to correct possible clerical mistakes in judgments); *Goett v. V1 Jets Int'l, Inc.*, No. 14-CV-8256 (BCM), 2021 WL 520421, at *3 (S.D.N.Y. Feb. 9, 2021) ("Rule 60(a) may be used when as a result of 'ministerial oversight' the court has forgotten to include mandatory pre-judgment or post-judgment interest.").

Accordingly, the Court respectfully recommends that post-judgment interest be awarded at the rate set forth in 28 U.S.C. § 1961 on (1) the Firealarm Judgment, calculated from September 6, 2019, until the date of payment, as to Defendant ESE; (2) the ESE Judgment, calculated from January 4, 2019, until the date of payment, as to Defendant Firealarm; and (3) the additional delinquencies, calculated from the date judgment is entered in this case until the date of payment, as to both Defendants, who are jointly and severally liable. *See Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity, & Apprenticeship, Skill Improvement & Safety Funds v. Shelbourne Constr. Corp.*, No. 19-CV-2312 (ARR) (PK), 2020 WL 1668041, at *7 (E.D.N.Y. Mar. 5, 2020), *report and recommendation adopted*, No. 19-CV-2312 (ARR) (PK), 2020 WL 1666461 (E.D.N.Y. Apr. 3, 2020); *Finkel*, 970 F. Supp. 2d at 131.

### C. Attorneys' Fees and Costs

Finally, Plaintiff seeks to recover $8,792 in attorneys' fees and costs associated with this action. (*See* Compl., ECF No. 1, ¶ 58; Harras Decl., ECF No. 11, ¶¶ 14–21; Pl.'s Mem., ECF No. 13, at 17–18; Pl.'s Letter, ECF No. 17, at 1.) ERISA mandates that a plaintiff recover attorney's fees in any successful action to recover delinquent contributions. 29 U.S.C. § 1132(g)(2)(D). In addition, the CBA and JIB Collection Policy provide for recovery of attorneys' fees and costs. (*See* Firealarm Agreement, ECF No. 11-

1, Article 11 § 9; ESE Agreement, ECF No. 11-2, Article II § 12; JIB Collection Policy, ECF No. 11-3, at 4–5.)

Courts have broad discretion in determining a reasonable attorney's fee. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008). The method for determining reasonable fees in this circuit is based on a number of factors, such as the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, the experience, reputation and ability of the attorney, and awards in similar cases. *See Arbor Hill*, 522 F.3d at 186 n.3, 190. In particular, when assessing an attorney's requested hourly rate, courts typically consider other rates awarded in the district in which the reviewing court sits. This is known as the "forum rule." *See Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174–75 (2d Cir. 2009) (recounting history of the forum rule).

Once a court determines the reasonable hourly rate, it must multiply that rate by the number of hours reasonably expended in order to determine the presumptively reasonable fee. *See Arbor Hill*, 522 F.3d at 190; *see also Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'"). With very limited exceptions, "contemporaneous time records are a prerequisite for attorney's fees in this Circuit." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983); *see also Finkel*, 970 F. Supp. 2d at 127.

1. <u>Reasonable Attorneys' Fees</u>

In this case, Plaintiff seeks $8,244 in attorneys' fees for a total of 25 hours worked. (*See* Billing Records, attached as Ex. F to Harras Decl., ECF No. 11-6.) This total is comprised of 22.8 hours billed by Virginia & Ambinder, LLP partner John M. Harras, at

$350 per hour ($7,980); and 2.2 hours billed by two legal assistants at a rate of $120 per hour ($264). (*Id.*) Plaintiff claims these rates were negotiated by members of the JIB, and are consistent with the fees approved by courts in this district. (*See* Harras Decl., ECF No. 11, ¶ 17; Pl.'s Mem., ECF No. 13, at 17 (citing *Finkel v. KLK Elec., Inc.*, No. 19-CV-4945 (NG) (SJB), 2020 WL 3885739, at *4 (E.D.N.Y. June 25, 2020)).

Reasonable hourly rates in this district generally range "from $300 to $450 per hour for partners . . . and $70 to $100 per hour for paralegals." *Ret. Fund of Loc. 1482 Paint & Allied Prod. Manufacturers v. N. Adhesives, Inc.*, No. 19-CV-5609 (MKB) (RER), 2020 WL 6370060, at *4 (E.D.N.Y. May 27, 2020), *report and recommendation adopted*, No. 19-CV-5609 (MKB) (RER), 2020 WL 5587271 (E.D.N.Y. Sept. 17, 2020); *see also Finkel v. Lintech Elec., Inc.*, No. 18-CV-6865 (MKB), 2021 WL 25354, at *5 (E.D.N.Y. Jan. 4, 2021); *Shelbourne Constr. Corp.*, 2020 WL 1668041, at *8; *Temperini Mech. Inc.*, 2018 WL 8452493, at *7.

Here, the Court finds Mr. Harras' requested hourly rate of $350 to be reasonable. *See Finkel*, 2020 WL 3885739, at *4 (approving $350 hourly rate for Virginia & Ambinder partner); *see also N. Adhesives, Inc.*, 2020 WL 6370060, at *5 (approving $400 hourly rate for partner in ERISA case). In addition, though the legal assistants' time is billed at a rate slightly higher than what is normally approved in this district, *see, e.g.*, *Gesualdi*, 2021 WL 6550952, at *5 (reducing requested paralegal hourly rate from $120 to $100), the Court finds that given the amount of hours billed (2.2), the difference would be negligible in this case, and overall finds this rate to be reasonable. Lastly, having reviewed Plaintiff's counsel's contemporaneous billing records (Billing Records, ECF No. 11-6), the Court finds that the 25 hours expended in this matter constitute a reasonable amount. *See Shelbourne Constr. Corp.*, 2020 WL 1668041, at *9 (approving 45.30 hours in ERISA default context); *Richard's Improvement Bldg. Inc.*, 2016 WL 6110455, at *15 (approving 31.9 hours).

The Court accordingly recommends that Plaintiff's request for an award of $8,244 in attorneys' fees be granted.

2. <u>Reasonable Costs</u>

"When a prevailing party seeks to recover those costs associated with the prosecution of an action, the court is permitted to award reasonable expenses incurred by the attorneys and charged to clients." *N. Adhesives, Inc.*, 2020 WL 6370060, at *5 (citing *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 628 (E.D.N.Y. 2017)). Plaintiff's counsel seeks to recover $548 in costs related to his action, comprised of $402 for filing the complaint and $146 for serving Defendants. (*See* Harras Decl., ECF No. 11, ¶ 19; Billing Records, ECF No. 11-6.) The Court finds these costs to be reasonable and therefore respectfully recommends that Plaintiff's request for an award of $548 in costs be granted.

**CONCLUSION**

For the foregoing reasons, the Court respectfully recommends that Plaintiff's motion for default judgment be granted and Plaintiff be awarded damages in the total amount of $2,917,238.59. Specifically, the Court recommends that judgment be entered against Defendants Firealarm and ESE as follows:

(1) finding that Firealarm is an alter ego of and a single employer with ESE, and vice versa, and that Defendants are jointly and severally liable for each other's obligations pursuant to the Court's Order;

(2) finding ESE liable for the balance of the Firealarm Judgment in *Finkel v. Firealarm Electrical Corp.*, 18-CV-7211 (ILG) (JO), in the amount of $1,030,788.96, including post-judgment interest as to ESE at the statutory rate, to be calculated from September 6, 2019, the date judgment was entered in that case;

(3) finding Firealarm liable for the balance of the ESE Judgment in *Finkel v. E.S.E. Electrical, Inc.*, No. 18-CV-4767 (ARR) (RLM), in the amount of $578,090.48, including post-judgment interest as to Firealarm at the statutory rate, to be calculated from January 4, 2019, the date judgment was entered in that case;

(4) finding ESE and Firealarm jointly and severally liable for $606,811.63 for delinquent contributions incurred by Firealarm between December 19, 2018, and October 7, 2020, including post-judgment interest as to both Defendants at the statutory rate, to be calculated from the date judgment is entered in this action;

(5) finding ESE and Firealarm jointly and severally liable for $692,755.52 for delinquent contributions incurred by ESE between April 25, 2018, and December 26, 2018, including post-judgment interest as to both Defendants at the statutory rate, to be calculated from the date judgment is entered in this action; and

(6) finding ESE and Firealarm jointly and severally liable for $8,792 in attorneys' fees and costs incurred in this action, including post-judgment interest as to both Defendants at the statutory rate, to be calculated from the date judgment is entered in this action.

In addition, Plaintiff is directed to serve a copy of this report and recommendation on Defendants Firealarm Electrical Corp. and E.S.E. Electrical, Inc. by **February 16, 2022**, and to file proof of service with the Court.

\* \* \* \* \*

Any objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable LaShann DeArcy Hall, at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen days. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order.

*See, e.g., Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

      **SO ORDERED.**

Dated:  Brooklyn, New York
       February 11, 2022

                          *Taryn A. Merkl*
                        _____
                        TARYN A. MERKL
                        UNITED STATES MAGISTRATE JUDGE